JANET F. LoStracco *vs.* NICOLA LoStracco.

No. 90-P-587.

Worcester. September 5, 1991. - January 17, 1992.

Present: WARNER, C J., PERRETTA, & JACOBS, JJ.

*Divorce and Separation*, Child support, Division of property.

Where the child support provisions of a divorce judgment allowed the wife
to have the use and occupancy of the marital home, but required that
the home be sold in the event of her remarriage and the proceeds di-
vided between the parties, this court concluded that the condition re-
quiring sale of the house could not stand in view of the judge's stated
objective of providing stability of the home environment of the parties'
children; the issue of sale was to be left to modification proceedings
should a change in the parties' circumstances occur. [4-5]

COMPLAINT for divorce filed in the Worcester Division of
the Probate and Family Court Department on August 28,
1987.

The case was heard by *John J. Moynihan*, J.

*Irwin Kwiat* for Janet F. LoStracco.

*David W. Sugarman* for Nicola LoStracco.

WARNER, C.J. By a judgment of divorce nisi dated Sep-
tember 11, 1989, the plaintiff (Janet) was given custody of

the parties' four minor children, then eleven, nine, six and four years of age. In relevant part, the divorce judgment further provides that Janet have the use and occupancy of the marital home "until the youngest child is emancipated or [Janet] remarries"; on the happening of the triggering event, the home is to be sold and the proceeds are to be divided equally (with a credit to the husband, Nicola, not in issue). The only issue argued in this appeal by Janet is the propriety of the condition which requires sale of the home on her remarriage.[1]

We draw essential facts from findings of the judge which are not disputed. The principal asset of the parties is the marital home, which had a fair market value at the time of trial of $150,000 to $160,000 and was subject to a first mortgage with a balance of $4,400.[2] Nicola provided most of the substantial down payment for the home and made the first mortgage payments during the marriage. The current payment on that mortgage for principal, interest and taxes appeared to be about $205 per month.

The judge's findings on and rationale for the order for use and occupancy of the marital home were as follows. He found that the children "must be supported and provided for until they are emancipated." The evidence, he said, "compels the finding that [they] have been *psychologically* and *emotionally*" damaged by the divorce of their parents (emphasis supplied). "The children need the *stability* of their familiar home environment for a period of time as *they sort out the problems*. The children need the *support and stability* which are provided by remaining in the marital home until they are all emancipated or until that support is no longer needed and

---

[1]After our first consideration of this appeal, we issued an order, dated May 7, 1991, requiring the Probate Court judge to make findings of fact and conclusions of law (see Mass.R.Dom.Rel.P. 52[a], as amended) and to articulate the rationale underlying his judgment, especially with respect to the sale of the home. (Janet had claimed error in the judge's failure to do so.) After compliance with the order and opportunity for further briefing, we heard oral argument on September 5, 1991.

[2]There was also a mortgage to Nicola's mother which is not an issue in this appeal.

a new family unit is created by their mother's remarriage."[3] (Emphasis supplied.) The judge concluded that child support should take the form of weekly payments,[4] medical and dental insurance coverage and use and occupancy of the marital home,[5] the last form to terminate on the emancipation of the youngest child or the remarriage of Janet. There was no provision for alimony for either party.

The judge reasoned that while "the children need the *stability* the home represents for *at least some period of time*," the remarriage condition "took into consideration the likelihood of [Janet's] improved financial condition upon her completion of law school,[6] and by the infusion of additional income of a new husband,[7] both factors which would negate the need for the support afforded by the use and occupancy. There would also be the realization of substantial net proceeds by [Janet] upon the sale of the real estate which would enhance her estate.[8] The court presumes that the mother's choice to remarry, introduce a new man into the home and create a new family unit, would include a consideration of whether such a step would be in the best financial interest of the minor children." (Emphasis supplied.) The judge concluded that "[w]hen the use and occupancy *support* is no longer necessary, [Nicola] should realize his investment. [He] should not be required, under these circumstances, to continually provide support to the new family unit in this form given the choice made by [Janet] and the *lack of need*." (Emphasis supplied.)

---

[3]There is no indication in the record that Janet had a plan to remarry.

[4]The judgment provided that Nicola pay $165 per week plus thirty-one percent of any bonus as child support.

[5]The judge found that Nicola could not afford to provide equal accommodations for the children. The judgment ordered that Janet pay "operating charges" of the marital home, including principal, interest and taxes on the first mortgage.

[6]At the time of trial, Janet was enrolled as a third-year student in a four-year program at an unaccredited law school whose continued existence was in jeopardy.

[7]See note 3, *supra.*

[8]This, of course, would occur whether or not the sale was postponed. See text to note 2, *supra.*

The judge made clear beyond peradventure that the order for use and occupancy of the marital home was a form of child support. Such an order is a traditional child support provision, *Hartog* v. *Hartog*, 27 Mass. App. Ct. 124, 128 (1989), and is subject to modification. G. L. c. 208, § 28. See generally 2A Kindregan & Inker, Family Law and Practice § 1187 (1990). We confine our examinination of the disputed condition to the basis upon which the judge put it. Here, the judge not only explicitly made the order as child support but gave as his principal and crucial reasons for so doing the psychological and emotional well-being of the children and their need for stability as "they sort out the problems" stemming from the parents' divorce. Those considerations constituted valid objectives of a support order for use and occupancy. See *Hartog* v. *Hartog*, 27 Mass. App. Ct. 124 (1989). The mother's remarriage (which could occur after the passage of ninety days from the entry of the judgment of divorce nisi, see G. L. c. 208, §§ 21 & 24) has no predictable rational connection to those objectives so as to undergird an absolute condition of termination of the residency form of support. The mother's presumed care in choosing a future partner with the children's financial interest in mind or that such a choice would create a "new family unit," propositions of dubious general validity, likewise have no logical relationship to the primary goals which the judge sought to accomplish or to Nicola's ability to satisfy his obligation to provide financial support for the children.[9] See *Escamilla* v. *Escamilla*, 127 Cal. App. 3d 963, 970 (1982);[10] *Martin* v. *Martin*, 507 So. 2d 1136, 1137 (Fla. Dist. Ct. App. 1987) (Pearson, J., concurring); *Scherberger* v. *Scherberger*, 260 Ga. 635, 636 (1990); *Reynolds* v. *Reynolds*, 681 S.W. 2d 522, 525-526 (Mo. Ct. App. 1984); *Schaeffer* v. *Schaeffer*, 184 N.J. Super. 423, 428-429 (1982). Contra *Lambert* v. *Lambert*, 403 So.

---

[9]See note 5, *supra.*

[10]In response to the decision in *Escamilla*, the California Legislature amended the Civil Code to provide for a rebuttable presumption that a use and occupancy award be terminated if the custodial parent remarried. See *Guthrie* v. *Guthrie*, 191 Cal. App. 3d 654, 658-660 (1987).

2d 484, 486 (Fla. Dist. Ct. App. 1981); *Messal* v. *Messal,* 424 So. 2d 932, 933 (Fla. Dist. Ct. App. 1983); *Markham* v. *Markham,* 485 So. 2d 1299, 1301 (Fla. Dist. Ct. App. 1986).

The condition for sale of the marital home on Janet's remarriage cannot stand in the face of the judge's sensible and thoughtful rationale for the order for use and occupancy as a form of child support. Material changes in the circumstances of the parties which affect the use and occupancy order, or any other aspect of the judgment, must be left to modification proceedings, in which a Probate Court judge has considerable discretion in determining an equitable resolution. See *Schuler* v. *Schuler,* 382 Mass. 366, 370-371 (1981); *Heistand* v. *Heistand,* 384 Mass. 20, 26-27 (1981). See also *Martin* v. *Martin, supra* at 1139-1140.

The provision in the judgment of divorce nisi which requires sale of the marital home upon Janet's remarriage is vacated. In all other respects, the judgment is affirmed.

*So ordered.*