NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-786

COMMONWEALTH

vs.

ARTHUR MUDDE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of aggravated rape as a joint venturer with his codefendant, Duc Minh La.[1]  On appeal, he claims that he received ineffective assistance of counsel, the prosecutor made misstatements of the evidence in her closing argument, and that several witnesses gave improper cumulative first complaint testimony.  We affirm.

1.  Ineffective assistance of counsel.  The defendant claims for the first time on appeal that he was deprived of effective assistance of counsel where his trial counsel did not present an expert witness to explain alternative possibilities

_____

[1] The defendant was acquitted of a second count of aggravated rape.

as to how the defendant's deoxyribonucleic acid (DNA) could have been found on the victim's genital area.  We disagree.

Claims of ineffective assistance of counsel are disfavored if they are raised for the first time on direct appeal. Commonwealth v. Zinser, 446 Mass. 807, 811 (2006).  The exception to this is "when the factual basis of the claim appears indisputably on the trial record."  Commonwealth v. Keon K., 70 Mass. App. Ct. 568, 573-574 (2007).  We are not convinced that this case falls within the exception.

It is not clear from the record how expert testimony would have rebutted the evidence against the defendant.  Indeed, because the defendant did not raise this claim in a motion for new trial, we have no affidavits or testimony from trial counsel whether his acts or omissions were part of his trial strategy, nor do we have an affidavit outlining what the testimony of a putative expert would have been, and we do not have findings from the trial judge as to the likely impact of this omission. See Commonwealth v. Alicea, 464 Mass. 837, 850-851 (2013) (ineffective assistance claim based on failure to call expert "generally doomed" if not supported by expert's affidavit disclosing content of potential testimony); Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994) (when counsel fails to call certain witnesses at trial, record alone provides

"insufficient factual basis for appellate review").  Because the defendant's claim of ineffective assistance of counsel on direct appeal fails to appear indisputably on the record, we decline to resolve it.[2]

2.  The prosecutor's closing argument.  The defendant also claims that the prosecutor made three material misstatements of the evidence in her closing argument which requires a new trial.  We disagree.

The first claimed misstatement is that the prosecutor improperly attributed the selection of the Casamigos tequila to the defendant.  As the defendant did not object to the prosecutor's remark at trial, we review to determine if there was error, and if so, whether it created a substantial risk of a miscarriage of justice.  See Commonwealth v. Desiderio, 491 Mass. 809, 815 (2023).  There was no error.

_____

[2] In any event, we conclude that the omitted expert testimony did not create a substantial risk of a miscarriage of justice.  See Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994) (if counsel's omission does not present substantial risk of miscarriage of justice, no basis for ineffective assistance of counsel claim).  The jury convicted the defendant on a joint venture theory, suggesting that the presence of the defendant's own DNA on the victim's genitals was immaterial to that conviction.  In addition, the defendant's counsel presented his DNA transfer theory through cross-examination of the Commonwealth's DNA experts, and argued it in his closing argument.  Because "the jury were provided with essentially expert testimony on the subjects on which the defendant claims he needed expert opinion," Alicea, 464 Mass. at 851, there was no risk that justice miscarried.

3

The defendant claims that it was the female guests at the nightclub who requested the Casamigos tequila.  That much is true.  Nightclub personnel informed Kearvyn Arne, the defendant's friend, that, given the number of people at the table, Arne would have to purchase another bottle of alcohol.  Arne sent a text message to the defendant to ask what type of alcohol he should purchase, because "the girls" wanted Casamigos tequila while some of the defendant's friends preferred Hennessy cognac.  The defendant responded to Arne that, if he wanted "us to hit," i.e., to have sex with the women, that Arne should purchase the Casamigos because it was "more strong."  Accordingly, the defendant was involved in the selection of the tequila, and the text messages revealed the reason why.  There was no misstatement.

The defendant next claims, also for the first time on appeal, the prosecutor's argument improperly connected the condoms in the defendant's bathroom to the rape.  We disagree.

At trial, the victim testified that before the defendant raped her, he "fidget[ed] with his hands and like sort of open[ed] something up.  [She could] tell he was taking out a condom."  The victim added that he was fidgeting with his hands near his genital area.  From this evidence, it was a reasonable inference that the condom found in the defendant's bathroom

4

trash receptacle was connected to the rape. See Commonwealth v. Francis, 450 Mass. 132, 142 (2007). After all, "inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Sabin, 104 Mass. App. Ct. 303, 305 (2024), quoting Commonwealth v. Howe, 103 Mass. App. Ct. 354, 357 (2023). The inference the prosecutor drew was proper.

Despite this, the defendant maintains that the argument was nonetheless improper because an earring found in the trash with the condoms did not belong to the victim. But this argument is a non sequitur fallacy. It does not logically follow that because one item in the trash was not connected to the rape, the other items in the trash could not be connected to the rape. There were a number of people at the "after party" in the defendant's apartment, and the earing could easily have been discarded by one of them or by someone on a different occasion. There was no error, and thus, no risk that justice miscarried.

The defendant further claims the prosecutor unfairly argued that the defendant removed the victim's underwear. The defendant specifically objected to the prosecutor arguing that "[t]he defendant helped [the victim] out of her clothes and against her will." The defendant maintained that this implied

that he "ripped off her dress."[3]  On appeal, the defendant takes a slightly different tack, claiming there was no evidentiary support for the victim's claim that the defendant removed her underwear because no underwear was ever recovered and she arrived at the hospital not wearing any.

However, despite acknowledging the victim's testimony that the defendant removed her underwear, the defendant nevertheless claims that this was insufficient to provide an evidentiary basis because it was not corroborated.  As a result, he claims the argument was inflammatory and an improper appeal to the jury's sympathy.  We disagree.

As a starting point, we note that in sexual assault cases, the victim's testimony is "sufficient, standing alone, to support a finding [of guilt] beyond a reasonable doubt." Commonwealth v. Gonzalez Santos, 100 Mass. App. Ct. 1, 3 (2021). If a victim's testimony alone is sufficient to support a finding of guilt, it necessarily is sufficient to support a subsidiary finding of fact upon which the prosecutor was entitled to rely in her closing argument.  More importantly, a prosecutor is entitled to marshal the facts in evidence and any fair inferences drawn from those facts, and to argue "forcefully for

---

[3] Since the defendant timely objected, we review for prejudicial error.  Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

6

the defendant's conviction" (citation omitted).  <u>Commonwealth</u> v.

<u>Rutherford</u>, 476 Mass. 639, 643 (2017).  That is what was done

here.  There was no error.[4]

3.  <u>Witness testimony</u>.  Finally, the defendant claims that

the testimony of witnesses who attended the party at the

defendant's apartment, including the victim, provided non-

probative and improper additional corroborative complaint

testimony.  We disagree.[5]

"If independently admissible evidence, 'other than that

specifically and properly designated as first complaint

testimony, serves no purpose other than to repeat the fact of a

complaint and thereby corroborate the complainant's accusations,

it is inadmissible.'"  <u>Commonwealth</u> v. <u>Dargon</u>, 457 Mass. 387,

399-400 (2010), quoting <u>Commonwealth</u> v. <u>Arana</u>, 453 Mass. 214,

229 (2009).  "However, if that evidence does serve a purpose

_____

[4] This conclusion is buttressed by the judge's thoughtful and thorough instructions to the jury to rely on their own recollection of the evidence, and that closing arguments are not evidence.  The judge also provided the jury with written copies of his instructions.

[5] The defendant also takes issue with a portion of Theresa Barrera's first complaint testimony, who could not remember who called the police or what was said to the police.  However, this was not subject to any objection, was brought out on cross-examination, and was collateral to the central issue at trial. The defendant merely mentions this portion of Barrera's testimony in his brief, and fails to claim, let alone explain, how he was prejudiced by this.

separate and apart from the first complaint doctrine, the judge may admit it 'after careful balancing of the testimony's probative and prejudicial value'" (citation omitted). Dargon, supra at 400.

The victim properly testified to the circumstances of sexual assault. Her testimony was clearly relevant and probative to the defendant's trial on the indictments. It was entirely proper for her to describe what happened, including (without objection) that after the codefendant raped her, she ran from the apartment, she was "freaking out" about what had happened, and she was "yelling" to Theresa Barrera and Zuleyma Calderon that the defendant and codefendant had "raped [her]." See Commonwealth v. McCoy, 456 Mass. 838, 845 (2010) (victim, "as well as the first complaint witness, may testify to the details of the complaint itself"). Moreover, "[e]vidence of a victim's state of mind or behavior following a crime has long been admissible if relevant to a contested issue in a case." Commonwealth v. Aviles, 461 Mass. 60, 69 (2011), quoting Arana, 453 Mass. at 225. Given the victim's level of intoxication, this evidence was admissible and relevant to her state of mind. There was no error, and thus, no risk that justice miscarried.[6]

---

[6] We further note that the defendant did not suffer any unfair prejudice by this testimony because he relied on discrepancies between it and the first complaint witness's

8

The defendant's remaining claim, that the testimony of other witnesses provided improper additional corroborative complaint evidence, is without merit. Zuleyma Calderon provided relevant testimony regarding seeing the victim lying in the defendant's bed, following the codefendant into the living room, recording the scene on her cell phone, and showing the codefendant's face in the video because she believed he had just harmed the victim. Barrera and Calderon accompanied the victim out of the apartment and put her in an Uber that took her home. This testimony was relevant to how investigators identified the codefendant, as well as how the victim left the apartment, and it was not first complaint evidence.

The remaining witnesses, Kearvyn Arne, Hida Rahma, and Julia Arnett, the Sexual Assault Nurse Examiner (SANE), are also challenged by the defendant as having provided "backdoor first complaint" testimony. However, the defendant's brief fails to cite to the trial record to show which testimony was improper. In this posture, the argument is waived. See Jeevanandam v. Bharathan, 496 Mass. 103, 109 n.12 (2025); Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).

---

testimony as part of his defense. See McCoy, 456 Mass. at 850-851.

9

Even if the claim was not waived, these witnesses did not provide additional corroborative complaint testimony. Arne and Rahma both testified as percipient witnesses to the events of that evening. Arne testified to his interactions with the defendant, planning the evening's events, and their text messages from before and after the rape. All of this evidence was relevant and probative of the defendant's guilt. Similarly, Rahma testified to her night out with the victim at the nightclub and meeting the defendant. This was relevant to identifying him.

Relative to the SANE nurse, she testified to the collection and analysis of the DNA evidence, as well as her physical examination of the victim. This served the purpose of providing necessary information related to the investigation of the matter. The judge even instructed the jury that Arnett was not offering an opinion on whether a sexual assault occurred. The testimony of these witnesses was admissible for reasons other

10

than corroborating the victim's allegations, and there was no abuse of discretion in admitting it in evidence.

<u>Judgment affirmed</u>.

By the Court (Meade, Hodgens & Allen, JJ.[7]),

Clerk

Entered:  April 17, 2026.

---

[7] The panelists are listed in order of seniority.